Brian T. Dunn, State Bar No. 176502
 bdunn@cochranfirm.com
Edward M. Lyman III, State Bar No. 248264
 elyman@cochranfirm.com
**The Cochran Firm California**
4929 Wilshire Boulevard, Suite 1010
Los Angeles, California 90010
Telephone: (323) 435-8205
Facsimiles: (323) 282-5280

Gregory J. Ramirez, State Bar No. 150515
 gramirez@gjramirezlaw.com
**Law Office of Gregory J. Ramirez**
220 S. A Street, Ste. 1, Oxnard, CA 93030-5762
Telephone: (805) 483-1090
Facsimiles: (805) 228-4669

*Attorneys for all Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS LOZANO, DECEASED, by and through his Co-Successors in Interest, OSCAR PUENTES, individually, and KARLA GUTIERREZ, individually. | COMPLAINT FOR DAMAGES |
| Plaintiffs, | 1.  42 U.S.C. §1983 *Deprivation of Civil Rights* |
| v. | 2.  42 U.S.C. §1983 *Illegal customs, policies, and procedures* |
| WELLPATH LLC, a Delaware limited liability company; CALIFORNIA FORENSIC MEDICAL GROUP, INC. dba WELLPATH, a California professional corporation; H.I.G. CAPITAL, LLC, a Delaware limited liability company; COUNTY OF VENTURA; a municipal corporation; SHERIFF WILLIAM AYUB, in his individual and official capacities; WILLIAM T. FITHIAN III, M.D.; PAUL ADLER, D.O.; RONALD POLLACK, M.D.; JANICE THOMAS, M.D.; GERARD BOYLE; JORGE A. DOMINICIS; and DOES 1-10; individually, jointly, and severally, | 3.  Cal. Civ. Code §52.1 *Violations of the Tom Bane Civil Rights Act* |
| | 4.  42 U.S.C. §12132 *Violations of the Americans with Disabilities Act (ADA)* |
| | 5.  Wrongful Death |
| | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiffs, by and through their attorneys, THE COCHRAN FIRM CALIFORNIA and the LAW OFFICE OF GREGORY J. RAMIREZ, for their complaint against Defendants, state as follows:

## JURISDICTION AND VENUE

1.      This is a civil rights wrongful death/survival action arising from Defendants' deliberate indifference to the serious medical and mental health needs of pretrial detainee CARLOS LOZANO, resulting in his suicide on May 19, 2020, at the Ventura County Pre-Trial Detention Center.   This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the First, Fourth, and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.  Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367, to hear and decide claims arising under state law.

2.      A substantial part of the events and/or omissions complained of herein occurred in the City of Ventura, County of Ventura, California, and pursuant to 28 U.S.C. §1391(b)(2) and Central District of California General Order No. 21-01, this action is properly assigned to the Western Division of the United States District Court for the Central District of California.

## THE PARTIES

### The Plaintiffs

3.      Decedent CARLOS LOZANO's ("Carlos" or "Decedent") claims are brought through his mother Plaintiff KARLA GUITERREZ ("Karla") and father OSCAR PUENTES ("Oscar") (collectively "parents"), as co-successors in interest, pursuant to California Code of Civil Procedure §§ 377.10 *et seq*. and federal civil rights laws. Carlos had no spouse or children.  Successor in interest declarations executed by both parents are attached to this complaint as Exhibit 1.  A true and correct copy of Carlos' Death Certificate is attached as Exhibit 2.

4.      Plaintiffs brings these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq*. and 377.60 *et seq*., which provide for survival and wrongful death actions.

5.      Karla and Oscar also bring their claims individually and on behalf of their son Carlos, on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law, and California law.  Plaintiffs also brings these claims as Private Attorneys General, to vindicate

1    not only their rights and their son's rights, but others' civil rights of great importance.

2    **The Wellpath Defendants**

3        6.    Defendant WELLPATH LLC ("WELLPATH") is a private for-profit Delaware limited

4    liability company (DE No. 7192611), located at 1283 Murfreesboro Road, Suite 500, Nashville,

5    Tennessee, and registered in the State of California as a foreign limited liability company, with its

6    principal office in California located at 3911 Sorento Valley Blvd, Suite 130, San Diego, California

7    92121.

8        7.    Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. ("CFMG INC.") is a

9    for-profit California Professional Corporation (CA No. C1230306), located at 3911 Sorento Valley

10   Blvd, Suite 130, San Diego, California 92121, doing business as "Wellpath."

11       8.    At all material times, CFMG INC. and its parent entities, affiliates, subsidiaries, officers,

12   directors, executives, employees, agents, and representatives, provide medical services to Defendant

13   COUNTY OF VENTURA, through a contract entered January 1, 2016 ("CONTRACT 7281").  A true

14   and correct copy of CONTRACT 7281 is attached as **Exhibit 3**.

15       9.    At all material times, each of WELLPATH's and CFMG INC.'s supervisors, managers or

16   executives were responsible for the hiring, retaining, training, and supervising of the conduct, customs,

17   policies and practices of its member employees and agents of CFMG INC., including DOES 1-10.

18       10.    Medical care providers, employees and agents such as WELLPATH and CFMG INC.,

19   employed by a government entity are state actors for purposes of 42 U.S.C. § 1983 are acting under

20   color of law when treating inmates and/or implementing policies and practices regarding provision of

21   medical care.  *West v. Atkins*, 487 U.S. 42, 54 (1988).

22       11.    Defendants WILLIAM T. FITHIAN, III M.D. ("FITHIAN"), PUAL ADLER, D.O.

23   ("ADLER"), RONALD POLLACK, M.D. ("POLLACK"), and JANICE THOMAS, M.D.

24   ("THOMAS") were at all material times acting within the course and scope of their employment with

25   WELLPATH and CFMG INC. (and within the scope and course of their employment by VENTURA

26   COUNTY by virtue of CFMG INC.'s existing contract with VENTURA COUNTY) and were

27   responsible for properly assessing and classifying inmates, properly assessing and addressing the

28   general mental health and general medical needs of inmates, and properly assessing and treating the

serious medical and mental health needs of inmates, including, but not limited to, prevention of self-harm, suicide attempt prevention, suicide prevention, and observation and treatment of: suicidal and potentially suicidal inmates, inmates suffering from mental illness and/or emotional disturbances. Defendants WILLIAM T. FITHIAN, III M.D. ("FITHIAN"), PUAL ADLER, D.O. ("ADLER"), RONALD POLLACK, M.D. ("POLLACK"), and JANICE THOMAS, M.D. ("THOMAS"), the to-be identified CFMG INC. Ventura County Program Manager, any other, to-be-identified CFMG INC. Psychiatric Nurse or Nurses responsible for VENTURA COUNTY jails, all other to-be-identified (currently named as "DOEs") CFMG INC. nurses, LVNs, or other staff, as well as certain other DOE Defendants including, but not limited to, CFMG INC. employees and agents, were acting within the course and scope of their employment with CFMG INC. (and within the course and scope of their employment by VENTURA COUNTY by virtue of CFMG INC.'s contract with VENTURA COUNTY) and were responsible for properly assessing and classifying inmates, properly assessing and addressing the general mental health and general medical needs of inmates, and properly assessing and treating the serious medical and mental health needs of inmates, including, but not limited to, prevention of self-harm, suicide attempt prevention, suicide prevention, and observation and treatment of: suicidal and potentially suicidal inmates, inmates suffering from drug induced psychosis, inmates suffering from drug overdoses, and inmates suffering adverse effects from drug ingestion, and/or mental illness, and/or emotional disturbance, as well as providing appropriate observation and a treatment plan for serious medical needs, prevention and addressing the risk of self-harm by inmates, suicide attempt prevention, suicide prevention, appropriate observation of suicidal or otherwise emotionally disturbed inmates, providing appropriate observation and a treatment plan for inmates suffering the effects of controlled substances, drug-induced states of psychosis, and/or overdoses, and/or inmates who are a danger to themselves by virtue of being under the influence of drugs, and/or mental illness, and/or emotional disturbance, as well as care and treatment for mental illness and emotional disturbance, monitoring the mental health and vital signs of inmates, and promptly rendering and/or summoning medical care when it was needed, including, but not limited to, transferring inmates/patients to inpatient emergency medical or psychiatric facilities.

12.     Plaintiff is informed, believes, and thereon alleges that Defendants FITHIAN and other

CFMG INC. employees, agents, and to-be-identified Defendants, at all material times, lived and worked in Monterey County, and performed, directed, oversaw, or supervised telepsychiatry and other medical services at VENTURA COUNTY's jails remotely, from Monterey, California.  In addition, Defendant FITHIAN oversees all statewide jail operations for CFMG INC., and sets policies and procedures for all operations, from Monterey County, California, including, but not limited to, perpetuating and approving all policies and procedures that led to Carlos' injuries including death—as well as perpetuating and approving the lack of necessary policies and procedures, and approving or perpetuating policies, or the lack thereof, relating to effectuating, ordering, or otherwise ensuring the transfer of county jail inmates to hospitals for emergency medical and mental health care.

13.     On information and belief, CFMG INC. and Defendant TAYLOR FITHIAN, M.D. are responsible for making and enforcing policies, procedures, and training related to the medical and mental health care of prisoners and detainees in Defendant VENTURA COUNTY's jails including: assessing inmates for self-harm risk, prevention of self-harm, suicide attempt prevention, suicide prevention, and observation and treatment of: suicidal, emotionally disturbed, potentially suicidal, inmates suffering from drug induced psychosis, inmates suffering from drug overdoses, and inmates suffering adverse effects from drug ingestion, and/or mental illness, and/or emotional disturbance; instituting appropriate precautions and measures to address these conditions; approving housing classification that takes into account these conditions; instituting appropriate observation to prevent self-harm or attempted suicide; instituting appropriate treatment plans for the serious mental health needs of inmates; communicating about an inmate's self-harm, suicide attempt, or suicide risk with custodial staff, health care professionals, and outside facilities; and, where indicated, effectuating, ordering, or otherwise ensuring the transfer of county jail inmates to hospitals for emergency medical and mental health care.

14.     Furthermore, Defendant FITHIAN was at all times responsible for the medical and psychiatric care provided to Carlos at VENTURA COUNTY Pre-Trial Detention Facility, and for making sure that Carlos was placed on appropriate drug use or drug withdrawal monitoring, that he received a toxicology screening to ascertain any substance he was under the influence of, that he received drug-induced psychosis monitoring and care, self-harm precautions, suicide attempt

precautions, and FITHIAN was responsible for effectuating, ordering, or otherwise ensuring the transfer of Carlos to a hospital for emergency medical and/or mental health care, and was responsible for ensuring that, in general, Plaintiff was timely provided all necessary and appropriate medical and mental health care for all of his medical and mental health needs.

15.     In addition, Defendant FITHIAN was at all times responsible for staffing the CFMG INC. medical and psychiatric services at the VENTURA COUNTY jails, including, but not limited to, making sure that only properly licensed and credentialed health care providers provide care, and that no provider work outside his or her scope of practice or licensure.

16.     Private managers, executives, owners, directors, board members, supervisors, (such as CFMG INC.) employed to direct the delivery of medical care to inmates are state actors acting under color of law for purposes of 42 U.S.C. § 1983.  *West v. Atkins*, 487 U.S. 42, 54 (1988).

17.     Defendant GERARD BOYLE ("BOYLE") is the founder of WELLPATH.  Defendant JORGE A. DOMINICIS ("DOMINICIS"), is the Chief Executive Officer of WELLPATH.

18.     Defendant H.I.G. Capital, LLC, ("H.I.G.") is a Delaware limited liability company, located at 1450 Brickell Avenue, 31st Floor, Miami, Florida, 33131, unregistered with the California Secretary of State, with a principal place of business in California located at 12100 Wilshire Blvd., Suite 1625, Los Angeles, CA 90025.  H.I.G. was founded by Co-Chief Executive Officers Sami Mnaymneh and Anthony Tamer.  Other executive officers and leadership at H.I.G. include Co-Presidents Rick Rosen and executive directors Douglas Berman and Rob Wolfson, all of whom have played an integral role in acquiring, investing in, and taking a controlling interest in the financial operations of CFMG Inc., since 2012.

19.     WELLPATH, CFMG, INC., H.I.G., GERARD BOYLE, DOMINICIS, FITHIAN, ADLER, POLLACK, THOMAS, are collectively referred to as the "WELLPATH DEFENDANTS."

20.     H.I.G. is merely the alter-ego of the other WELLPATH DEFENDANTS and at all material times there existed such a unity of interest between H.I.G. and the other WELLPATH DEFENDANTS, such that separate personalities long exist and if their acts are treated as those of their respective entities alone, inequitable results will follow.

21.     In 2012, CFMG, INC. faced mounting civil actions, including a class action, for

repeatedly violating civil rights of inmates.  At that time, H.I.G. began setting up affiliated entities to facilitate a leveraged buyout.   In November 2012, CFMG INC.'s then-president FITHIAN confirmed his corporation was authorized to issue only one class of common shares totaling 1,000 shares. FITHIAN also confirmed to the California Secretary of State that the corporation is indeed a professional corporation pursuant to California Corporations Code § 13400, *et seq*.

22.     On October 31, 2012, H.I.G. and its affiliates formed a Delaware Corporation Wellpath CFMG, Inc. (DE 5235332).  In 2012, H.I.G. through an affiliate acquired a controlling interest in CFMG INC. via a highly leveraged buyout.  FITHIAN, the prior majority shareholder of CFMG INC., even though it is a professional corporation, knowingly sold his ownership interests in CFMG INC., through H.I.G.'s affiliates in exchange for cash and equity interest in H.I.G. and its affiliates, including, without limitation, California Forensic Management Group, Inc. which changed its name to Correctional Medical Group Companies, Inc., and later to Wellpath Management, Inc., a Delaware Corporation (DE 5237374).  In H.I.G.'s leveraged buyout of CFMG, INC., H.I.G. undercapitalized the majority interest they acquired in CFMG, INC.

23.     After H.I.G. acquired CFMG INC., H.I.G. controlled and dominated CFMG INC., and continue to do so, notwithstanding the fact that CFMG INC. is a professional corporation organized under California law and H.I.G. and its officers who exert coercive financial control over CFMG INC. do not hold professional medical licenses within the State of California.  In 2016, CFMG INC.'s Chief Operating Officer was Elaine Hustedt, who is not a licensed person within the State of California as defined by 13401.5.  CFMG INC.'s current leadership includes Cindy Watson, Secretary, who is also not a licensed medical professional in the State of California.  Nor is H.I.G., nor its private equity affiliates entities that qualifies under 13401.5 to hold shares of a California professional corporation. In fact, CFMG INC. is currently controlled by the H.I.G. DEFENDANTS and managed through WELLPATH LLC's leadership, including Defendant DOMINICIS, Chief Executive Officer; Kip Hallman, President; Ben Slocum, Chief Operating Officer; Juan Perez, Chief Financial Officer, Bob Martin, Chief Information Officer, and Marc Goldstone, Chief Legal Officer,  Ann Hatcher, Chief Human Resources Officer; Cindy Watson, Division President; Jeremy Barr, Division President; Jeff Traczewski, Division President; none of whom hold any qualifying professional license pursuant to

13401.5 that would enable them to control or maintain CFMG INC., a professional corporation, dba WELLPATH.  In fact, WELLPATH's current board only consists of two physicians.

24.    H.I.G. controls, dominates, and operates the WELLPATH DEFENDANTS, and does so for the purpose of evading creditor liability, concealing proceeds resulting from money laundering, and other ill-gotten gains from acts of public corruption.  These acts include, but are not limited to, the activities of WELLPATH's founder Gerard Boyle, who was indicted in 2019 by a federal grand jury, for charges of public corruption, including bribery and illicit kickbacks to the former Norfolk Sheriff while money laundering the illegal revenue derived from Boyle's procurement and maintenance of medical service contracts with the City of Norfolk.  Boyle carried out this illicit activities through Correct Care Solutions, LLC, which H.I.G. acquired in 2018 to merge with CFMG, Inc.'s affiliates to create WELLPATH.

25.    At all material times, H.I.G. has handled WELLPATH's and CFMG INC.'s finances to accommodate H.I.G.'s own business interests, thereby maximizing their profits at the expense of cutting critical medical staff, training budgets, all of which continues to result in severe declines in the medical care that CFMG, INC. provides to inmates within the custody of VENTURA COUNTY's jails.  As a result of H.I.G.'s control of CFMG INC., H.I.G. has knowingly caused and continues to cause harm, including wrongful deaths, to its patients incarcerated throughout the United States, including within VENTURA COUNTY Jails.

26.    Through H.I.G.'s creation of the aforementioned entities, H.I.G. have failed to maintain arm's length relationship with WELLPATH and CFMG INC.  H.I.G. DEFENDANTS have disregarded corporate formalities throughout the United States, including California, Delaware, and Florida, by frequently acquiring and changing the names of entities, failing to file accurate statements of information, and thereby causing confusion in the marketplace for municipal entities seeking requests for proposals from medical service providers, including WELLPATH, Correct Care Solutions LLC, and CFMG, INC.

### The Ventura County Defendants

27.    Defendant COUNTY OF VENTURA ("COUNTY") is a public entity, duly organized and existing under the laws of the State of California. Under its authority, the COUNTY operates the

Ventura County Sheriff's Office ("VCSO") and the Ventura County Jail, including without limitation, the Ventura County Pre-Trial Detention Facility located at 800 S. Victoria Ave, Ventura, CA 93009. COUNTY has authority to sue and be sued, to purchase and make contracts, to dispose of and resolve legal actions and tort claims, provide for jails and corrections, to operate and be responsible for county health facilities, such as its jails through contracts, joint ventures or partnerships, it is charged and is responsible to make payments for goods furnished its departments, to pay salaries for its employees (such as all sheriff deputies), and owns, operates, manages, directs, and finances the Ventura County Sheriff's Department ("VCSO"), a public department of the COUNTY, which employs other Defendants in this action. VCSO has its own authority to enter into contracts and did so in the controlling Contract with H.I.G./CFMG INC. herein, to sue and be sued, and is responsible for all deputy training, discipline, hiring, firing, maintaining deputy and staff records, and to taking corrective actions as it affects VCSO and its jails, inmates and pretrial detainees and deputy officers and staff. Deputies and officers are under the direct authority and control of the Sheriff and the VCSO.

28.    Defendant SHERIFF WILLIAM AYUB ("AYUB"), at all times mentioned herein, was employed by Defendant VENTURA COUNTY as Sheriff, and he was acting within the course and scope of that employment.  In that capacity, Defendant AYUB was a policy making official for VENTURA COUNTY.  Further, Defendant AYUB was ultimately responsible for the provision of medical and mental health care to inmates at the COUNTY jail, including assessment of inmates for medical emergencies and possible mental health needs, and all VENTURA COUNTY policies, procedures, and training related thereto. He is being sued in his official and individual capacities.

29.    As a result of VENTURA COUNTY's contract with CFMG, INC., CFMG INC.'s *CFMG* officers, directors, executives, employees, agents, and representatives provide a governmental function and stand in the same capacity as the COUNTY OF VENTURA and the Ventura County Sheriff's Office, in carrying out their duties at the Ventura County Pre-Trial Detention Facility.  The COUNTY OF VENTURA and CFMG, INC., were and are responsible to develop joint policies and procedures affecting the mentally ill in custody and to provide continuity of care from the time a detainee is booked until they are released.  COUNTY OF VENTURA and SHERIFF AYUB were and are responsible for overseeing that CFMG staff complies with their contractual medical responsibilities to

inmate's mental health care.   At all material times, Defendant CFMG provided medical, mental health, and nursing care to pretrial and post-conviction detainees and prisoners in COUNTY jails, pursuant to a contract with the COUNTY. On information and belief, CFMG and its employees and agents are and were at all material times responsible for making and executing policies, procedures, and training related to the medical care and/or mental health care of detainees and prisoners in the COUNTY jails, including, but not limited to, properly assessing and classifying inmates, properly assessing and addressing the general mental health and general medical needs of inmates, and properly assessing and treating the serious medical and mental health needs of inmates, including, but not limited to, prevention of self-harm, suicide attempt prevention, suicide prevention, and observation and treatment of: suicidal and potentially suicidal inmates, inmates suffering from drug induced psychosis, inmates suffering from drug overdoses, and inmates suffering adverse effects from drug ingestion, and/or mental illness, and/or emotional disturbance.

30.     Certain DOE Defendants, at all material times, were employees and agents of Defendant COUNTY, who were responsible for assigning Decedent to appropriate housing and housing classification, with appropriate observation and care rendered to him, given his risk of self-harm, his risk of suicide-attempt, his ingestion of a controlled substance, the possibility he was suffering from a drug-induced state of psychosis, the possibility he was suffering from grave, life-threatening, and acute effects from the ingestion of a substance, his medical needs, his excessively elevated vital signs, and other indicators. These to-be-identified DOE Defendants were also responsible for Decedent—and had state and federal duties to protect Decedent—from harm inflicted by other COUNTY employees and jail staff, other inmates, and any third parties. In doing the acts or omissions hereinafter described, certain DOE Defendants acted within the course and scope of their employment with Defendant COUNTY and acted under color of state law. The individually named Defendants and certain DOE Defendants were either Correctional Officers, Sheriff's Deputies, Sergeants, Captains, Lieutenants, or other Peace Officers, Doctors, Nurses, Social Workers, and/or civilian employees and/or agents who were responsible for the care, housing, observation, and safety of inmates, including Decedent, and/or the transfer of Decedent to an inpatient facility for inpatient medical and/or psychiatric care.

31.     Certain DOE Defendants, at all material times, were employees and agents of Defendant

COUNTY; pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure, Plaintiffs allege in the alternative that these to-be-identified DOE Defendants caused the death of Decedent, and in doing the acts or omissions hereinafter described, these certain DOE Defendants acted within the course and scope of their employment with Defendant COUNTY, CFMG, and acted under color of state law. The individually named Defendants and certain DOE Defendants were Correctional Officers, Sheriff's Deputies, Sergeants, Captains, Lieutenants, or other Peace Officers and/or civilian employees and/or other agents of COUNTY.

32.     The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants named herein as DOES 1 through 10 are unknown to Plaintiffs, who therefore sue said Defendants by said fictitious names.  Plaintiffs will amend this Complaint to show said Defendants' true names and capacities when the same have been ascertained. Plaintiffs are informed, believes, and thereon allege that all Defendants sued herein as DOES are in some manner responsible for the acts, omissions, and injuries alleged herein.

33.     Plaintiffs allege, on information and belief, that each of the Defendants sued herein was wrongfully, deliberately indifferently, negligently, and/or otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiffs.  Further, one or more DOE Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including both individually named and to-be-identified DOE Defendants.

34.     Plaintiffs are informed, believe, and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed, believe, and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may hereinafter be otherwise, specifically alleged.  At all material times, each Defendant was an integral participant, jointly and fundamentally engaged in constitutionally violative, unlawful, and/or tortious activity, resulting in the deprivation of Plaintiffs' constitutional rights and other actionable harm.

35.     The acts and omissions of all Defendants were at all material times pursuant to the actual customs, policies, practices, and/or procedures of VENTURA COUNTY and/or CFMG INC.

36.     At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

37.     The Defendants named above and certain DOE Defendants are sued in their individual capacities.

38.     A proper and timely tort claim was presented to VENTURA COUNTY on behalf of Plaintiffs, pursuant to Government Code § 910 *et seq*., and this action was thereafter timely filed within all applicable statutes of limitation.

39.     This complaint is pleaded in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

40.     After graduating high school, 18 year old Carlos Lozano planned to attend community college.  In the meantime, he worked in retail near the Camarillo mall to help support his family. Carlos was known to be friendly with customers and a very hard worker who showed up on time, every day.  Carlos has no prior criminal history.

41.     The day after Christmas 2017, Carlos had admittedly been going through a difficult break-up with his girlfriend.  He was experiencing what he described to his friends and family a vicious cycle of anxiety and depression.  Carlos had the emotional intelligence and strength to seek out and regularly attend therapy.  Unbeknownst to Carlos at the time, he was manifesting symptoms of schizophrenia, which progressively worsened over the ensuing months.

42.     By May 2018, Carlos' family and friends had recognized Carlos was no longer acting the same.  Carlos' family and friends had observed his occasional memory lapses, disorganized thoughts, and incoherent speech.

43.     Over the next couple of weeks, Carlos' behavior became more erratic and bizarre.  For example, Carlos told a co-worker that Kanye West had been looking for him and was going to come to their workplace.

44.     Carlos told his friends and family that the City of Camarillo was attempting to poison

him with Fentanyl.  Carlos told friends his name was "Virgil" and that he could see into the future.

45.     Carlos posted bizarre and paranoid thoughts on his social media accounts.  His friends and family grew especially concerned.

46.     By May 9, 2018, Carlos' family and friends noticed his condition was continuing to take a turn for the worse.  Throughout the day, Carlos' friends and family attempted to console him.  They believed he was having a mental breakdown of sorts and planned to take him to the hospital for an evaluation.  Later that night, when Carlos' friends left.  Carlos told his parents that his friends were out to get him.  Carlos accused his father of trying to kill him.

47.     In the early morning hours of May 10, 2018, Carlos thought his father was attempting to poison the entire family.  Carlos told his mom that his heart was going to come out of his chest.  Carlos agreed to go to the hospital.   When Carlos and his mom walked outside of their apartment towards and were getting into their car, Carlos ran off and yelled to neighbors that his mom was trying to poison him.

48.     Carlos' father called Ventura County Sheriff's Office for help.   Shortly after 2 a.m., Deputies caught up with Carlos at the Camarillo Outlet mall.  Carlos claimed he had done "meth and fentanyl."  Deputies, however, were concerned that Carlos' behavior was not caused by drugs but a serious mental health issue.  Deputies discussed the matter with their Sergeant and determined hospital treatment was best.

49.     By 3:30 a.m., Carlos was triaged at St. John's Pleasant Valley Hospital Emergency Department.  Carlos told hospital staff that he saved the world and wants to die.  Carlos was later observed attempting to pull things off the hospital walls.  He was prescribed Ativan.  A physician presumed Carlos had consumed synthetic cannabis and discharged him.  Carlos' mom transported him back home.

50.     Throughout the day, Carlos' family, extended family, and friends visited with him at home.  Carlos was calm but continued making bizarre comments.  Later that evening, in light of the fact Carlos' mom hid her car keys, Carlos found them.  Carlos' mom attempted but was unable to get the keys away from him.  Carlos ran out their apartment.

51.     Outside, Carlos got into the driver's seat of his mom's car while yelling to the neighbors

13

COMPLAINT FOR DAMAGES

that she was trying to kill him.  A concerned neighbor used his car to block Carlos from backing out of the carport.  But Carlos backed directly into the neighbor's vehicle and drove off.

52.     Carlos turned around and attempted to run his parents over, hit a pole, then drove off. Carlos entered the 101 on-ramp and headed northbound.  While on the 101, Carlos collided with five vehicles including a California Highway Patrol ("CHP") vehicle.

53.     Carlos was apprehended and taken to Camarillo Police Department.  A CHP officer conducted a drug recognition evaluation ("DRE") on Carlos.  The CHP officer believed Carlos appeared to be suffering from mental impairment—not caused by drugs.

54.     Carlos was transported to Ventura County Medical Center for evaluation.  At the hospital, Carlos was whispering incoherent and bizarre conversations.  Carlos said he was a time traveler and sent by the government.  Carlos stated his body was not his real one and that he was a robot.  Carlos explained Kanye West was sending out messages and going to get him.  And that Donald Trump was going to send a bomb the hospital.

55.     A blood sample was taken from Carlos and revealed only a small amount of THC was in his system.  When Carlos was uncuffed for a CT scan, he began to flail uncontrollably.  It took four officers to restrain him.

56.     Carlos was injected with haloperidol Haldol, Ativan, and Benadryl, but it was not enough to sedate him.  So, he was given anesthetic propofol and intubated.  Later, he was given Zyprexa.

57.     Carlos was diagnosed with several physical injuries and acute psychoses, an altered mental state, major depressive disorders, and other unspecified psychoses not due to a substance or known physiological condition.

58.     On May 12, 2018, Carlos was discharged from the hospital and transported to Ventura County Jail's Pre-Trial Detention Center with recommendations to place him in special housing with a psychiatric follow-up.

59.     Upon arriving at the Pre-Trial Detention Facility, Carlos believed he was Jesus Christ and that the jail deputies and staff were his family.  Carlos thought he was brought to jail to help others. Around 4:00 p.m., CFMG INC. conducted a psychiatric intake and placed Carlos on Level II security precautions for monitoring.

60.     On May 13, 2018, around 8:40 a.m., CFMG INC. conducted a mental health suicide risk assessment and evaluation of Carlos.  A CFMG INC. nurse had noted that an officer had reported Carlos may be at risk for suicide and that Carlos was experiencing anxiety, bizarre thoughts, bizarre behaviors.   The CFMG INC. nurse further noted Carlos was mumbling unintelligible statements.   She assessed Carlos as being psychotic and planned for him to remain on Level II safety precautions and scheduled a re-evaluation for the following day by the psychiatric nurse.

***Defendants observe Carlos attempting to commit suicide at least 7 times.***

61.     A report released by the Major Crimes Division of the Ventura County Sheriff's Office demonstrates the Defendants had actual notice of the man times Carlos had not only manifested suicidal ideations but attempted to commit suicide.  The incidents set below are not intended to be an exhaustive list.  The incidents are based on the limited information presently known to Plaintiffs.

- 05/12/18—Carlos is housed in the Ventura County Jail's Pre-Trial Detention Facility;
- 05/14/18—Carlos sees the devil and attempts to drown himself;
- 05/28/18—Voices tell Carlos to kill himself.  Carlos attempts to drown himself in the toilet;
- 06/21/18—Carlos wants to kill himself via drowning.
- 03/27/20—Carlos puts his clothes in the toilet and is sent for a psychiatric evaluation;
- 04/03/20—Carlos floods his cell and drenches his clothes and expresses suicidal thoughts;
- 04/15/20—Carlos has suicidal ideations and reports "not wanting to be here anymore";
- 04/24/20—Carlos hears voices and has telepathy with certain females.
- 04/25/20—Carlos urinates on the walls and floors;
- 04/25/20—Carlos floods his cell floor, breaks noodles, and smears sauce across the floor.  His shirt and pants are found on the floor, soaking wet;
- 04/26/20—Voices tell Carlos to hurt himself via drowning, that they want to kill him, and kill himself.  Carlos attempts to drown himself in his toilet. He reports he attempts to kill himself every day.  He is placed on suicide prevention.
- 05/17/20—Unknown staff conduct a wellness follow-up initiated over concerns for Carlos' safety.  Unknown staff feel Carlos is an increased risk for suicide.  Carlos is observed standing in his cell naked, putting clothing in his toilet, kissing the windows, and exiting his cell with his

eyes closed and psychomotor retardation.  A Sergeant reports that based on SST's and A Quad Deputy's concerns for Carlos' safety, Carlos "will be housed in Special Housing as a custody admit pending next day Psychiatrist evaluation."

- 05/18/20—At 14:34 hours, Carlos is moved to the Special Housing Unit.  He is observed decompensating and looks similar to his state prior to self-harm in the past (head in toilet).

***Carlos commits suicide.***

62.     On May 19, 2020, Carlos' vital signs were checked at 6:00 a.m.  Carlos was served breakfast at 6:10 a.m.  Breakfast consisted of two pancakes, oatmeal, orange slices, and milk.

63.     Deputies observed Carlos at 6:25 a.m., sitting on the floor of his cell with a blanket over his head.  By 7:06 a.m., deputies returned and noticed Carlos sitting in the same position.  Carlos was unresponsive.  Deputies entered his cell, removed the blanket from his head, and noticed orange an orange in his mouth.  Deputies pulled Carlos out of his cell, into the hallway, and removed half an orange from Carlos' mouth and a packet of maple syrup.  Deputy VanGundy administered CPR.  Upon starting chest compressions, no air was moving from Carlos' mouth.  Nathaniel Gwynne, a registered nurse, arrived and put a bag valve mask over Carlos' mouth, air began flowing, and orange pulp appeared in the mask.  A responding paramedic pronounced Carlos dead at 7:46 a.m.

64.     On May 20, 2020, an autopsy was performed at Ventura County Medical Examiner's Office where it was determined Carlos had died from asphyxia.

65.     The Defendants, and each of them, failed to abide by generally accepted standards in corrections and correctional healthcare which require that an inmate who is at risk of suicide and housed alone in a segregated cell or solitary confinement must be under constant observation.

66.     Plaintiffs are informed and believes and thereon allege that defendants, and each of them, had actual knowledge that Carlos was suffering from serious psychiatric illness, had serious psychiatric needs, and all Defendants were deliberately indifferent to his serious psychiatric needs, and denied him necessary psychiatric care. All Defendants were deliberately indifferent to Carlos' safety and psychiatric needs in their jail placement, monitoring, assessment, custody, and care decisions. Due to such deliberate indifference, Carlos' psychiatric condition deteriorated over the course of the nearly two years he was held in jail while awaiting trial, until he finally ended his own life.

67.     Currently unidentified deputies, jail administrators, mental health personnel, and/or law enforcement officers (DOES), knew and/or had reason to know that Carlos was a mentally ill and emotionally disturbed person, with immediate and serious medical needs, consistently at very high risk of suicide, and yet they failed to respond appropriately or lawfully and failed to provide him with adequate monitoring or request a treatment plan for him. Defendant DOES were deliberately indifferent to Decedent's immediate and serious medical needs, including mental illness[es] and emotional disturbance. Further, Defendants and DOES 1-10 recklessly disregarded Decedent's safety by failing to properly and adequately monitor and care for Decedents, and Defendants failed to accommodate his mental illness and disability(ies).

68.     Carlos' death was the proximate result of the Defendants' deliberate indifference to his serious medical needs, as set forth above.

69.     Carlos' death was also the proximate result of Defendant VENTURA COUNTY's, AYUB's, and the WELLPATH DEFENDANTS' failure to reasonably train and supervise jail deputies and health care personnel tasked with screening, admitting, observing, monitoring, and protecting Carlos. These substantial failures reflect all of the Defendants' policies of implicitly or directly ratifying and/or authorizing the deliberate indifference to serious medical needs and the failure to reasonably train, instruct, monitor, supervise, investigate, and discipline deputy sheriffs and health care personnel employed by VENTURA COUNTY, AYUB, WELLPATH DEFENDANTS, and H.I.G. DEFENDANTS, with deliberate indifference to inmates' serious medical needs.

70.     Carlos' death was also the proximate result of reflect Defendant VENTURA COUNTY's, AYUB's, and the WELLPATH DEFENDANTS' failure to reasonably staff, train, supervise, and equip their medical and mental healthcare staff in the proper and reasonable screening, assessment, and care of severely mentally ill, emotionally disturbed inmates; failure to implement and enforce generally accepted, lawful policies and procedures at the jail; deliberate choices to permit and require LVN's to work outside of their legal scope of practice; and deliberate indifference to the serious psychiatric needs of inmates such as Carlos. These substantial failures reflect Defendant VENTURA COUNTY's, AYUB's, and the WELLPATH DEFENDANTS' policies implicitly ratifying and/or authorizing the deliberate indifference to serious medical needs by their medical and mental healthcare

staff and the failure to reasonably train, instruct, monitor, supervise, investigate, and discipline medical and mental healthcare staff employed by Defendants.

71.     At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton, and/or willful, conscience-shocking, reckless, malicious, deliberately indifferent to Decedent's and Plaintiff's rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

72.     As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, to the extent permitted and pled by the various legal claims set forth below, Plaintiffs sustained the following injuries and damages, past and future, among others:

73.     Wrongful death of Decedent, pursuant to Cal. Code of Civ. Proc. § 377.60 *et. seq.*;

74.     Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 *et. seq.*;

75.     At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton, and/or wilful, conscience-shocking, reckless, malicious, deliberately indifferent to Decedent's and Plaintiff's rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

76.     As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, to the extent permitted and pled by the various legal claims set forth below, Plaintiffs sustained the following injuries and damages, past and future, among others:

    a.  Physical injuries and mental traumas suffered by Carlos for two years as a result of Defendants' improper and inadequate confinement, confinement techniques, and medical care;

    b.  Wrongful death, pursuant to Cal. Code of Civ. Proc. § 377.60 *et. seq.*;

    c.  Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 *et. seq.*;

    d.  Carlos' hospital and medical expenses, pursuant to Cal. Code of Civ. Proc. § 377.20

*et. seq.*;

e. Coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.*20 et. seq.*;

f. Violation of Carlos' constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 *et. seq.* and federal civil rights law;

g. Carlos' loss of life, pursuant to federal civil rights law;

h. Carlos' conscious pain and suffering, pursuant to federal civil rights law;

i. Carlos' mother Karla's loss of her relationship with her son and attendant emotional distress, pursuant to federal civil rights law;

j. Carlos' father Oscar's loss of his relationship with his son and attendant emotional distress, pursuant to federal civil rights law;

k. All damages, penalties, and treble damages recoverable under 42 U.S.C. §§ 1983 and 1988, Cal Civil Code §§ 52 and 52.1 *et seq.* and as otherwise allowed under California and United States statutes, codes, and common law.

## FIRST CAUSE OF ACTION
### *Plaintiffs against all Defendants and Does 1-10*
### *Deprivation of Pretrial Detainee's Civil Rights*
### *Deprivation of the Parent/Child Relationship*
### *42 U.S.C. § 1983*

77.   Plaintiffs restate and incorporates by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

78.   By the actions and omissions described above, Defendants and DOES 1-20 violated 42 U.S.C. § 1983, depriving Decedent, through Plaintiffs as his successors in interest herein, and Plaintiffs individually, of the following clearly established and well-settled constitutional rights protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution:

a. Decedent's right to be free from deliberate indifference to his serious medical and mental health needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments;

b. Decedent's and Plaintiffs GUITERREZ's and PUENTES' right to familial association as secured by the First and/or Fourteenth Amendments.

79.     Defendants subjected Decedent and Plaintiff to their wrongful conduct, depriving Decedent and Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent, Plaintiff, and others would be violated by their acts and/or omissions.

80.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent and Plaintiff, sustained injuries and damages as set forth above at ¶ 76.

81.     The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants VENTURA COUNTY or AYUB in his official capacity.

82.     Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

**SECOND CAUSE OF ACTION**
***Plaintiffs against all Defendants and Does 1-10***
***For illegal customs, policies, and procedures***
***42 U.S.C. § 1983***
***(Monell)***

83.     Plaintiffs re-allege and incorporates by reference each and every allegation contained in this complaint, as though fully set forth herein.

84.     Plaintiffs allege, upon information and belief, the unconstitutional actions and/or omissions of the individually named and to-be-identified Defendants, and the personnel acting on behalf of Defendants were pursuant to the following customs, policies, practices and/or procedures of the VENTURA COUNTY and/or the WELLPATH DEFENDANTS, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officials for VENTURA COUNTY, VSCO, and/or the WELLPATH DEFENDANTS, including, but not limited to, the following:

      a.   To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical and psychiatric needs,

      b.   requiring such inmates in crisis to remain untreated in jail instead of providing for their serious medical needs;

      c.   To allow and encourage inadequate and incompetent medical and mental health care

for jail inmates and arrestees;

d.  To allow, encourage, and require Licensed Vocational Nurses, Psychiatric Technicians, and Associate Social Workers to work outside their legal scope of practice and without appropriate supervision, and conduct independent and unsupervised patient assessments;

e.  To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical and psychiatric condition, needs, and treatment;

f.  To house seriously mentally ill patients at high risk of suicide in solitary confinement in segregated cells, thereby increasing their risk of suicide;

g.  To prescribe medication, including psychotropic medication that has suicidal thoughts as a side effect, to patients without ever seeing or evaluating the patient;

h.  To continue the deliberately indifferent maltreatment and mistreatment of suicidal patients and failure to supervise health care personnel even after Ventura County grand jury investigation, numerous wrongful death lawsuits, class action lawsuits, and settlements arising from similar conduct;

i.  To provide no treatment plan or mental health treatment for severely mentally ill inmate-patients;

j.  To house mentally ill and emotionally disturbed inmates in solitary confinement in segregated housing with no legally required welfare checks;

k.  To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling mentally ill and/or emotionally disturbed persons or persons in crisis;

l.  To cover up violations of constitutional rights by any or all of the following:

   i.  By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical and psychiatric care at the jail;

   ii.  By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by jail staff;

and

    iii.  By allowing, tolerating, and/or encouraging jail staff to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

m.  To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, sheriff's office personnel, health care personnel and staff at the jail whereby an officer or member of the sheriff's office, does not provide adverse information against a fellow officer or member of the VCSO;  and

n.  To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (m) above, with deliberate indifference to the rights and safety of Decedent, of Plaintiff and the public, and in the face of an obvious need for such policies, procedures, and training programs.

85.    Defendants VENTURA COUNTY, AYUB, and the WELLPATH DEFENDANTS, through their employees and agents, and through their policy-making supervisors and remaining DOES, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants ADLER, POLLACK, THOMAS, and DOES 1-20, and other COUNTY personnel, with deliberate indifference to Plaintiffs', Decedent's, and others' constitutional rights, which were thereby violated as described above.

86.    The unconstitutional actions and/or omissions of Defendants VENTURA COUNTY, AYUB, the WELLPATH DEFENDANTS and DOES 1-10, and other VENTURA COUNTY, VCSO, WELLPATH, and CFMG INC. personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for VENTURA COUNTY and VCSO.

87.    Plaintiffs are informed and believe and thereon alleges that the details of these incidents have been revealed to the authorized policymakers within VENTURA COUNTY and VCSO, and that such policymakers have direct knowledge of the fact that the death of Decedent was the result of

deliberate indifference to his serious mental health needs. Notwithstanding this knowledge, the authorized policymakers within the VENTURA COUNTY, VCSO have approved of the conduct and decisions of the WELLPATH DEFENDANTS and DOES 1-10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Decedent. By so doing, the authorized policymakers within VENTURA COUNTY and VCSO have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believes, and thereupon allege, that Defendant VENTURA COUNTY and other policy-making officers for VENTURA COUNTY were and are aware of a pattern of misconduct and injury caused by VENTURA COUNTY correctional officers and the WELLPATH DEFENDANTS, including its jail medical and mental health staff similar to the conduct of Defendants described herein, but failed to discipline culpable officers, employees, and agents and failed to institute new procedures and policy within VENTURA COUNTY.

88. The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants VENTURA COUNTY, AYUB, and the WELLPATH DEFENDANTS were a moving force behind and/or a proximate cause of the deprivations of Decedent's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above at ¶ 76.

89. Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent, Plaintiffs and others would be violated by their acts and/or omissions.

90. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendant VENTURA COUNTY, AYUB, and the WELLPATH DEFENDANTS as described above, Decedent and Plaintiff suffered serious injuries and death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendant VENTURA COUNTY and the WELLPATH DEFENDANTS as set forth above.

///

**THIRD CAUSE OF ACTION**

*Plaintiffs against Defendant County Defendants and Does 1-10*
*For violations of the Tom Bane Civil Rights Act*
*California Civil Code § 52.1*

91.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

92.     Plaintiffs bring the claims in this cause of action as survival claims permissible under California law, including Cal. Code of Civ. Proc. Section 377.20 *et. seq*.

93.     By their acts, omissions, customs, and policies, Defendants VENTURA COUNTY, the WELLPATH DEFENDANTS, and DOES 1-10 acting in concert/conspiracy, as described above, while Decedent was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Plaintiffs' and Decedent's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

a.     The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

b.     Decedent's and Plaintiffs' fundamental rights to familial association as secured by the First and/or Fourteenth Amendments.

c.     The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1;

d.     The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43; and

e.     The right to emergency medical care as required by California Government Code §845.6.

94.     VENTURA COUNTY's, AYUB's, the WELLPATH DEFENDANTS', and DOES 1-10's violations of Plaintiffs' and Decedent's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act. Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Decedent's rights as described

above, Defendants violated Decedent's rights by the following conduct constituting threat, intimidation, or coercion:

    a.   With deliberate indifference to Decedent's serious medical needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for his medical and/or psychiatric needs;

    b.   Subjecting Decedent to ongoing violations of his rights to prompt care for his serious medical and psychiatric needs over days, causing immense and needless suffering, intimidation, coercion, and endangering his life and well-being;

    c.   Requiring psychiatric patients in at high risk of suicide to remain in jail without adequate supervision, competent mental health treatment, or any psychiatric treatment or treatment plan whatsoever, instead of allowing them to receive necessary emergency medical and psychiatric care;

    d.   Deliberately causing the provision of inadequate and incompetent medical and mental health care to San Joaquin County jail detainees and inmates;

    e.   Requiring LVN's, psychiatric technicians, and associate social workers to work outside their legal scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make;

    f.   Choosing not to provide the required constant observation for inmates at high risk of suicide who are housed in solitary confinement in segregated cells;

    g.   Housing severely mentally ill inmates, who are receiving no psychiatric care and are at high risk of suicide, in solitary confinement in segregated cells; and

    h.   Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

95.    The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of Decedent's rights, or to any legitimate and lawful jail or law enforcement

activity.

96.     Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

97.     Further, each Defendant violated Plaintiff's and Decedent's rights with the specific intent and purpose to deprive them of their enjoyment of those rights and of the interests protected by those rights.

98.     Defendants COUNTY and Does 1 – 20 are vicariously liable for the violation of rights by their employees and agents.

99.     Defendant County is vicariously liable pursuant to California Government Code §815.2.

100.    As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiff's and Decedent's rights under the United States and California Constitutions, Plaintiff (as successor in interest for Decedent) sustained injuries and damages, and against each and every Defendant is entitled to relief as set forth above at ¶ 76, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, treble damages and civil penalties.

### **FOURTH CAUSE OF ACTION**
*Plaintiffs against all Defendants and Does 1-10*
*Violations of the Americans with Disabilities Act (ADA)*
*42 U.S.C. 12132 & 29 U.S.C. § 794*

101.    Plaintiffs restate and incorporates by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

102.    At all material times, including, but not limited to prior to—and between— May 11, 2018 and May 19, 2020, Decedent was a "qualified individual" with a mental illness and disability and medical impairments that limited and/or substantially limited his ability to care for himself and control his mental, medical, or physical health condition as defined under the ADA, 42 U.S.C. § 12131 (2), and under Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794, 28 C.F.R. 42.540 (k); as such, Decedent qualified as an individual with a mental and physical disability under California law and Decedent met the essential eligibility requirements of COUNTY programs to provide access to medical and mental health care services for its detainee/inmate patients in COUNTY's jails while

they are in custody.

103.    Defendant VENTURA COUNTY's jail and mental health services are places of public accommodation and are covered entities for purposes of enforcement of the ADA, 42 U.S.C. §12181 (7)(F), and the Rehabilitation Act, 29 U.S.C. § 794, as explicated by the regulations promulgated under each of these laws. Further, on information and belief, Defendant COUNTY and its jail receives federal assistance and funds.

104.    Defendant VENTURA COUNTY's jail, as a local government and/or department or agency thereof, falls within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. Section 794(b).  Defendant VENTURA COUNTY is also within the mandate of the RA that no person with a disability may be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C. § 794.

105.    Under the ADA, Defendant VENTURA COUNTY is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities . . ." and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

106.    Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101 (a)(2).

107.    Defendant VENTURA COUNTY is mandated under the ADA not to discriminate against any qualified individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182 (a).

108.    The ADA, 42 U.S.C. § 12182(b)(1)(A)(iii), provides in pertinent part that: "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation that *is different or separate* from that provided to other individuals." *Id*. (emphasis added).

109.    Defendant VENTURA COUNTY violated the ADA, RA, and discriminated against

Decedent and Plaintiffs, violating their ADA, RA, and state protected rights by: (a) failing to provide services or to accommodate Decedent with access to appropriate, competent, and necessary care for his serious medical and psychiatric for persons who qualify for access and services under Welfare and Institutions Code 5150; (b) failing to provide services or accommodate Decedent as indicated and with appropriate classification, housing, and monitoring for a person in their sole and exclusive custody who they knew was mentally disabled and at risk for suicide; (c) failing to provide reasonable accommodations to people in custody with mental disabilities at its jail and, instead, providing a quality of care and service that is different, separate, inferior, and worse than the service provided to other individuals with the same disabilities; (d) denying Decedent, a qualified individual with a disability, the opportunity to participate in or benefit from the aid, benefit, or services of VENTURA COUNTY, in violation of 28 C.F.R. § 35.130(b)(1)(i); (e) by reason of Plaintiff's mental disabilities, Defendants did not afford Plaintiff an opportunity to participate in or benefit from the aid, benefits, and services that are equal to those afforded to other, non-disabled individuals by Defendants, in violation of 28 C.F.R. § 35.130(b)(1)(ii); (f) on the basis of Plaintiff's disability, the named Defendants failed to provide Decedent an aid, benefit, or service that was as effective in affording equal opportunity to obtain the same result, to gain the same benefit, and to reach the same level of achievement as provided to other individuals in the same situation, in violation of 28 C.F.R. §35.130(b)(1)(iii); (g) limited Decedent, a qualified individual with a disability, in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service of which Decedent was denied, in violation of 28 C.F.R. §35.130(b)(1)(vii).

110.    Decedent was denied the benefits of the services, programs, and activities of VENTURA COUNTY, and was denied accommodation for his disabilities, which deprived him of safety, necessary care, and mental health and medical health programs and services, which would have provided planning and delivery of treatment, follow-up, and supervision. This denial of accommodation, programs, and services was the result of his disability in that he was discriminated against because he was mentally ill, at risk for suicide, and gravely disabled, in that he suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter and is unable to advocate for himself; and, Decedent had

mental impairments that substantially limited one or more of his major life activities.

111.    As a result of the acts and misconduct of Defendant VENTURA COUNTY complained of herein, Decedent died, and Plaintiffs have suffered, are now suffering, and will continue to suffer damages and injuries as alleged above. Plaintiffs Karla and Oscar have suffered loss of love and society and claim damages for the wrongful death of their adult son Carlos in an amount not yet ascertained, but to be proven. Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs, and attorneys' fees as set forth in the ADA and RA and above, in ¶ 76.

## FIFTH CAUSE OF ACTION
### *Plaintiffs against all Defendants and Does 1-10*
### *Wrongful Death Negligence*

112.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

113.    At all times, Defendants VENTURA COUNTY, AYUB, the WELLPATH DEFENDANTS, and DOES 1-10, owed Plaintiff and Decedent the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

114.    At all times, these Defendants owed Plaintiffs and Decedent the duty to act with reasonable care.

115.    These general duties of reasonable care and due care owed to Plaintiffs and Decedent by these Defendants include but are not limited to the following specific obligations:

    a.   To provide safe and appropriate jail custody for Decedent, including reasonable classification, monitoring, and housing, including placing him on suicide watch with proper suicide precautions, and preventing access to physical conditions and items that could foreseeably be used for suicide;

    b.   To summon necessary and appropriate medical care for Decedent;

    c.   To use generally accepted law enforcement and jail procedures that are reasonable and appropriate for Plaintiff's status as a mentally ill and/or emotionally disturbed person;

    d.   To ensure that all employees are working within their legal scope of practice;

    e.   o ensure that inmate-patients who are at risk of suicide receive appropriate mental health care, monitoring, and supervision;

29

f.  To ensure that all inmates in segregated housing receive appropriate supervision, including constant supervision for inmates who are at risk of suicide;

g.  To ensure that all mentally ill patients receive a treatment plan, appropriate evaluation by a psychiatrist, and continuity of care;

h.  To ensure that inmates at high risk of suicide are not housed alone in solitary confinement, or when housing such inmates alone, to ensure they are placed on constant observation;

i.  To refrain from abusing their authority granted them by law; and

j.  To refrain from violating Plaintiff's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

116.  Defendants VENTURA COUNTY, AYUB, the WELLPATH DEFENDANTS, and DOES 1-10 through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff and Decedent.

117.  Defendants VENTURA COUNTY are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code section 815.2.

118.  As a direct and proximate result of these Defendants' negligence, Plaintiff and Decedent sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief as set forth above at ¶ 76, including punitive damages against such individual Defendants.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant herein, jointly and severally:

a.  Compensatory and exemplary damages in an amount according to proof and which is fair, just, and reasonable;

b.  Punitive damages under 42 U.S.C. § 1983 and California law in an amount according to proof and which is fair, just, and reasonable;

c.  All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42

U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., 52.1; 42 U.S.C. § 12132 and 29 U.S.C. § 794, and as otherwise may be allowed by California and/or federal law;

    d.  Declaratory and injunctive relief, including but not limited to the following:

        i.  An order requiring Defendant County to institute and enforce appropriate and lawful training, supervision, policies, and procedures for handling mentally ill and/or emotionally disturbed persons, and/or persons with serious medical and mental health needs at the Ventura County Jail;

        ii.  An order compelling Defendants to provide inmates at the Ventura County Jail access to appropriate, competent, and necessary care for serious medical and psychiatric needs;

        iii.  An order requiring VENTURA COUNTY to cease allowing and assigning LVN's, Psychiatric Technicians, and Associate Social Workers to work outside their legal scope of practice and without sufficient supervision;

        iv.  An order requiring VENTURA COUNTY to cease and desists from contracting with medical service providers, including the WELLPATH DEFENDANTS and CFMG INC., which have leadership, including officers, directors, and supervisors who are not professional licensed by the State of California to provide medical services;

        v.  An order requiring VENTURA COUNTY to cease and desist from allowing and assigning LVN's, Psychiatric Technicians, and Associate Social Workers to work outside their legal scope of practice and without sufficient supervision;

        vi.  An order requiring Defendants FIFTHIAN, ADLER, POLLACK, THOMAS to evaluate a patient before prescribing medication for the patient except in cases of emergency;

        vii.  An order compelling Defendant VENTURA COUNTY to properly classify,

1  house, and/or monitor inmates suffering from mental health disabilities,

2  including placement on suicide watch with proper suicide precautions;

3  viii.  An order requiring Defendant VENTURA COUNTY to provide constant

4  observation for all suicidal inmates housed alone in segregated cells;

5  ix.  An order prohibiting Defendants from continuing to allow, encourage, and

6  require unlicensed and/or inadequately trained and/or and inadequately

7  supervised medical and mental health staff to make decisions to place jail

8  inmates on, and remove inmates from, suicide watch or the safety cell;

9  x.  Such further relief, according to proof, that this Court deems appropriate and

10  lawful.

11  **JURY DEMAND**

12  Plaintiffs hereby demands a jury trial in this action.

13

14  DATED: April 13, 2021                    Respectfully submitted,

15                                                        **THE COCHRAN FIRM CALIFORNIA**

16

17  By:  _____

18  BRIAN T. DUNN
   EDWARD M. LYMAN III

19

20  *Attorneys for Plaintiffs*

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES